## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**JEANTY SAINT JEAN,**
     Plaintiff,

**v.**

     **Case No. 4:22-cv-1107-CLM**

**ALTOONA, ALABAMA, CITY OF***, et al.***,**
     Defendants.

## <u>MEMORANDUM OPINION</u>

Jeanty Saint Jean sues the City of Altoona, Officer Harrelson, and Unknown Officer A. (Doc. 29). Defendants ask the court to grant summary judgment on all counts in their favor. (Doc. 45). After reviewing the evidence in the light most favorable to Saint Jean, the court **GRANTS IN PART AND DENIES IN PART**.

## <u>BACKGROUND</u>

Saint Jean is a black immigrant. Officer Harrelson pulled Saint Jean's car over while he was driving through an Altoona public park. Officer Harrelson informed Saint Jean that the park was closed to the public and that Saint Jean's taillight wasn't working. When Saint Jean failed to produce proof of insurance, Officer Harrelson cited Saint Jean with two tickets. But Saint Jean refused to sign either ticket upon Officer Harrelson's request.

In response, Officer Harrelson ordered Saint Jean out of the vehicle and placed him in handcuffs. But the handcuffs were too small and cut Saint Jean's wrists severely enough to require medical attention. Officer Harrelson then tried to place Saint Jean into his patrol car, and Saint

Jean resisted. Either because of Officer Harrelson's use of force (Saint Jean claims Officer Harrelson kicked him) or Saint Jean's resistance, Saint Jean struggled to enter the car. Saint Jean says this struggle injured his knee, requiring surgery.

Officer Harrelson then searched Saint Jean's vehicle before transporting him to jail. At no point during this arrest did Officer Harrelson recite Saint Jean's *Miranda* rights. Saint Jean was charged with four counts that the Etowah County Circuit County later dismissed with prejudice because of a procedural deficiency by the State.

Saint Jean now sues Officer Harrison for negligence, unlawful seizure, and excessive force. Saint Jean also sues unnamed Officer A for excessive force and the City of Altoona for negligence, malicious prosecution, and abuse of process.

## STANDARD

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

**ANALYSIS**

Saint Jean brings various claims against the three defendants. The court breaks its discussion into three parts: (1) claims against Officer Harrelson, (2) claims against the City of Altoona, and (3) claims against others.

**A.    Claims against Officer Harrelson**

i.    Count I: § 1983 Unlawful Seizure

Saint Jean sues Officer Harrelson under § 1983 for unlawfully seizing him after a traffic stop. Traffic stops fall within the Fourth Amendment meaning of "seizure." *Whren v. United States*, 517 U.S. 806 (1996). To lawfully effect a traffic stop, an officer must have reasonable suspicion. *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022). Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity," including traffic violations. *Navarette v. California*, 572 U.S. 393, 396 (2014). Reasonable suspicion can be based on reasonable mistakes of law or fact. *Heien v. N. Carolina*, 574 U.S. 54, 61 (2014).

In short, to avoid summary judgment, Saint Jean must show that a reasonable jury could find Officer Harrelson lacked reasonable suspicion to survive summary judgment on Count I. He cannot.

Officer Harrelson says that he had reasonable suspicion that Saint Jean's broken tail light violated Alabama's laws governing the color of rear lights. Combined, three statutes dictate that tail lights must be red, stop (or brake) lights must be red or yellow, back up lights must be white, and license plates must be illuminated in white:

(c) Tail lamps.

(1) Every motor vehicle, trailer, semitrailer, and pole trailer and any other vehicle which is being drawn at the end of a train of vehicles shall be equipped with at least one tail lamp mounted on the rear which, when lighted as required, emits

a red light plainly visible from a distance of 500 feet to the rear. When vehicles are drawn in a train, only the tail lamp on the rearmost vehicle need actually be seen from the distance specified.

(2) Every tail lamp upon every vehicle shall be located at a height of not more than 60 inches nor less than 20 inches to be measured as set forth in Section 32-5-242.

(3) Every motor vehicle shall have a tail lamp or a separate lamp so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

Ala. Code. § 32-5-240(c);

(b) Signal lamps and signal devices.

(1) Any motor vehicle may be equipped and when required under this division shall be equipped with the following signal lamps or devices:

a. A stop lamp on the rear which shall emit a red or yellow light and which shall be actuated upon application of the service (foot) brake and which may but need not be incorporated with a tail lamp.

b. A lamp or lamps or mechanical signal device capable of clearly indicating any intention to turn either to the right or the left and which shall be visible both from the front and rear.

(2) A stop lamp shall be plainly visible and understandable from a distance of 100 feet to the rear both during normal

> sunlight and at nighttime and a signal lamp or lamps indicating intention to turn shall be visible and understandable during daytime and nighttime from a distance of 100 feet both to the front and rear. When a vehicle is equipped with a stop lamp or other signal lamps, such lamp or lamps shall at all times be maintained in good working condition. No stop lamp or signal lamp shall project a glaring or dazzling light.
>
> (3) All mechanical signal devices shall be self-illuminated when in use at the time mentioned in subsection (a) of Section 32-5-240.

Ala. Code. § 32-5-241(b); and,

> (g) Color of clearance lamps, side marker lamps, and reflectors.
>
> (1) Front clearance lamps and those marker lamps and reflectors mounted on the front or on the side near the front of a vehicle shall display or reflect an amber color.
>
> (2) Rear clearance lamps and those marker lamps and reflectors mounted on the rear or on the sides near the rear of a vehicle shall display or reflect a red color.
>
> (3) All lighting devices and reflectors mounted on the rear of any vehicle shall display or reflect a red color, except the stop light or other signal device, which may be red, amber, or yellow, and except that the light illuminating the license plate or the light emitted by a back-up lamp shall be white.

Ala. Code § 32-5-242(g).

Body camera footage shows that Saint Jean's taillight was broken, resulting in tail lights that appeared to be white and/or projected dazzling light, either of which violated Alabama law:



Relying on other body cam photos, Saint Jean argues that his taillight didn't violate Alabama law because it displayed red *and* white light. (Doc. 53, p. 5).







Saint Jean's evidence shows that his rear lights did project some red light. But it also emitted white light in a place other than the license plate, meaning that Officer Harrelson had reasonable suspicion to believe Saint Jean was committing a traffic violation. Because we must assume that jurors will follow Alabama law as instructed, the court finds that no reasonable juror could find differently.

In sum, there is no genuine dispute of material fact as to if Saint Jean's taillight was broken and emitting a color other than red. Whether Saint Jean violated Alabama law doesn't matter. Saint Jean fails to show that a reasonable jury could find that Officer Harrelson acted without reasonable suspicion. Because Saint Jean fails to show a constitutional violation, Officer Harrelson is protected by qualified immunity. *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010).

ii.    <u>Count II: § 1983 Excessive Force</u>

Saint Jean also sues Officer Harrelson under § 1983 for excessive force. Because there is a genuine dispute of material fact as to the type and amount of force used, the court **DENIES** summary judgment.

The court analyzes excessive force claims "under the Fourth Amendment's 'objective reasonableness' standard." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). "That standard asks whether the force applied is objectively reasonable in light of the facts confronting the officer, a determination [this court makes] from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight." *Mobley v. Palm Beach Cty. Sheriff Dep't.*, 783 F.3d 1347, 1353 (11th Cir. 2015) (quotations omitted). In determining reasonableness, the court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Conner*, 490 U.S. 386, 396 (1989).

Saint Jean claims he never resisted Officer Harrelson. Instead, Officer Harrelson's body cam video shows Saint Jean trying to comply when cuffed (Body Camera 03:00:28), explaining his arms couldn't bend in the way Officer Harrelson was moving them (Body Camera at 03:00:35-03:00:04), walking to Officer Harrelson's car without the need for manhandling (Body Camera 03:02:54-03:03:09), trying to climb into Officer Harrelson's patrol car (Body Camera, 03:03:45-03:03:46), and reacting when Officer Harrelson "kicked" him. (Doc. 46-1 at 70:1-73:22); (doc. 46- 1 at 72:12-73:22, 77:5-80:22); (doc. 46-1 at 77:5-23).

But the video and Officer Harrelson's testimony tell a different story. The video shows Saint Jean being argumentative, making Officer Harrelson repeat his requests, yelling, fighting, and not being compliant. It's impossible to tell from the video if Officer Harrelson kicked Saint Jean or not. And both parties testified to two versions of the incident. (Doc. 46-2, p. 42); (doc. 46-1, p. 29).

In short, there is a genuine dispute over the kick, and reasonable jurors could judge what happened differently. Because the court must view the evidence in a light most favorable to Saint Jean, the court **DENIES** summary judgment on Count II.

## B.    Claims against the City of Altoona

i.    Count IV: § 1983 *Monell* Liability

Saint Jean's first claim against Altoona is for *Monell* liability under §1983. Municipalities, like Altoona, can face liability under § 1983 if a plaintiff shows "a [] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). But a court can't find a municipality vicariously liable under § 1983.

Saint Jean presents no evidence showing an official Altoona policy causing his injury. Instead, Saint Jean argues that the "Altoona police force has a pattern of practice of disproportionately stopping and harassing Black drivers and immigrants." (Doc. 29, p. 8). Yet Saint Jean presents no evidence to support his claim of an unofficial policy of racial discrimination. (*See generally* doc. 53 and doc. 29). The only evidence Saint Jean presents supporting a custom or policy is his own experience of being pulled over by an Altoona officer on one other occasion over 20 years ago. (Doc. 46-1, p. 95); (doc. 46-3, p. 39). And this isn't nearly enough under *Monell*.

Because Saint Jean presents no evidence supporting *Monell* liability, and because Defendants present evidence refuting *Monell* liability, the court **GRANTS** summary judgment for Defendants.

ii.    <u>Counts V and VI: §1983 Malicious Prosecution and Abuse of Process</u>

Because Saint Jean hasn't sufficiently satisfied *Monell*, the court must **GRANT** summary judgment for Defendants on Count V (malicious prosecution under § 1983) and Count VI (abuse of process under § 1983).

iii.   <u>Counts VII and VIII: Alabama law Malicious Prosecution and Abuse of Process</u>

Saint Jean also accuses Altoona of malicious prosecution and abuse of process under state law. But the court **GRANTS** summary judgment for Defendants on these claims as well because municipalities can't act with malice under Alabama law,. *Neighbors v. City of Birmingham*, 382 So.2d 113 (Ala. 1980); *Franklin v. City of Huntsville*, 670 So. 2d 848, 850 (ala. 1995); *see* Ala. Code 1975 § 11-47-190. And malice is required to establish malicious prosecution and abuse of process. *See Mithell v. Folmar & Associates, LLP*, 854 So.2d 1115, 1118 (Ala. 2003); *Willis v. Parker*, 814 So.2d 857, 865 (Ala. 2001).

iv.    <u>Count IX: Negligence</u>

Finally, Saint Jean claims that Officer Harrelson acted negligently in arresting and apprehending Saint Jean and that his negligence can be attributed to Altoona. (Doc. 29, p. 11). Claims of negligence against either Officer Harrelson or Altoona fail.

The Alabama Code grants police officers immunity from tort liability "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala Code. 1975 § 6-5-338(a). And "the plain language of § 6–5–338(b), Ala. Code 1975, extends that discretionary-function immunity to the City." *Ex parte City of Gadsden*, 781 So.2d 936, 940 (Ala.

2000). Making a lawful arrest is a discretionary function. *Telfare v. City of Huntsville*, 841 So.2d 1222, 1228 (Ala. 2002).

As explained above, Officer Harrelson lawfully arrested Saint Jean. Perhaps a jury could find Officer Harrelson effected his arrest in an unlawful manner, but that doesn't make the arrest itself unlawful. Accordingly, both Officer Harrelson and Altoona are immune from tort liability under § 6-5-338.

**C.   Claims against Others**

i.   Count II: § 1983 Excessive Force against Officer A

The court **GRANTS** summary judgment for the Defendants on any claims against fictitious party Officer A. Fictious party practice is generally not allowed in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738.

ii.   Count III: Supervisory Liability against Freehling

The court already dismissed Freehling after Saint Jean's stipulation. (Doc. 24). The court won't allow Saint Jean to bring Freeling back into the case through his amended complaint. As a result, the court (again) dismisses this count against Freehling.

<u>CONCLUSION</u>

The court **GRANTS** summary judgment for Defendants on all counts except for Count II. As to Saint Jean's excessive force claim, the court **DENIES** summary judgment because there is a genuine dispute of material fact as to if Officer Harrelson used excessive force in carrying out Saint Jean's arrest.

**DONE** and **ORDERED** on January 6, 2025.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE